UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
KAREN TAVENNER, on behalf of herself      )   No. C09-1370RSL
and all others similarly situated,        )
                                          )
                    Plaintiff,            )
       v.                                 )
                                          )   ORDER GRANTING IN PART
THE TALON GROUP,                          )   PLAINTIFF'S MOTION FOR
                                          )   SUMMARY JUDGMENT
                    Defendant.            )
_____)

This matter comes before the Court on "Plaintiff's Motion for Summary Judgment." Dkt. # 113. Plaintiff has asserted breach of contact, breach of fiduciary duty, and Washington Consumer Protection Act ("CPA") claims against defendant on behalf of herself and three classes of similarly-situated persons. Plaintiff alleges that defendant improperly charged recording fees, wire/express fees, and reconveyance fees while serving as a closing agent in her 2005 loan transaction. Plaintiff seeks summary judgment on her individual claims regarding both liability and damages.[1]

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would

---

[1] Plaintiff's request for classwide relief is based on the same evidence that supports her individual claims. While the legal analysis regarding liability may be transferrable, the calculation of damages will require further factual development. The Court declines to grant classwide relief at this time.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

preclude the entry of judgment as a matter of law. L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial. Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1059 (9th Cir. 2012). The mere existence of a scintilla of evidence in support of the non-moving party's position will not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the light most favorable to the non-moving party could return a verdict in its favor. U.S. v. Arango, 670 F.3d 988, 992 (9th Cir. 2012).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

## BACKGROUND

In 2005, plaintiff sought to pay off a loan that was secured by a deed of trust on her home. Defendant served as the closing agent for the transaction pursuant to a four-page "Closing Agreement and Escrow Instructions" and a two-page "Supplement," both of which were prepared by The Talon Group. The instructions covered a wide range of topics including the following:

> **Settlement Statement.** The closing agent is instructed to prepare a settlement statement showing all funds deposited for the account of each of the parties and the proposed disbursements from such funds. . . . Some items may be estimated, and the final amount of each estimated item will be adjusted to the exact amount required to be paid at the time of disbursement. The settlement statement will be subject to audit and any errors or omissions may be corrected at any time. If any monetary error is found, the amount will be immediately paid by the party liable for such payment to

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT         -2-

the party entitled to receive it.

**Closing Agents Fees and Expenses.**  The closing agents [sic] fee is intended as compensation for the services set forth in these instructions.  If additional services are required to comply with any change or addition to the parties agreement or these instructions, or as a result of any party's assignment of interest or delay in performance, the parties agree to pay a reasonable additional fee for such services.  The parties shall also reimburse the closing agent for any out-of-pocket costs and expenses incurred by it under these instructions.  The closing agents [sic] fees, costs and expenses shall be due and payable on the closing date or other termination of the closing agents [sic] duties and responsibilities under these instructions, and shall be paid by the borrower unless otherwise provided in the parties agreement.

**Reconveyance.**  The Talon Group - Reconveyance Department will provide reconveyance tracking services.  Such services follow up after closing to be sure a full reconveyance or satisfaction of liens paid at closing are recorded to clear the title.  The charges will be separately shown on the HUD-1 settlement statement and will be the amount charged for the particular transaction.  There are other reconveyance service providers available with similar services.  You are free to shop around to determine that you are receiving the best services and the best rate for these services.  If you wish to do so your preference should be expressed to The Talon Group in time to arrange for the services and fees in time for closing.

**Settlement Statement Approved.**  The settlement statement prepared by the closing agent is approved by me, made part of these instructions by this reference, and I agree to pay my costs, expenses and other obligations itemized on that statement.  I understand that any estimated amounts will be adjusted to reflect the exact amounts required when the funds are disbursed, that the settlement statement continues to be subject to audit at any time, and if any monetary error is found, the amount will be paid by the party liable for such payment to the party entitled to receive it.

**Instruction to Close.**  The closing agent is instructed to perform its customary closing duties under these instructions, to deliver and record documents according to these instructions, and to disburse the funds according to the settlement statement, adjusting estimated amounts, when the closing agent has the documents required to close the transaction in its possession . . . .

Dkt. # 11, Exs. A and B (emphasis added).  The Escrow Instructions and the Supplement were signed by plaintiff on August 17, 2005.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -3-

The Talon Group provided plaintiff with estimates regarding the costs of closing the loan, including:

$462.40 in "settlement or closing fee to The Talon Group,"[2]

$45 in "wire/express to The Talon Group,"

$3.96 in "sales tax to The Talon Group" related to the wire/express fee,

$115 in "reconveyance fee to Talon Group/Recon Dept," and

$70 in "recording fees."

Dkt. # 11, Ex. E at 2. The estimated settlement statement provided by The Talon Group states that it reflects "actual settlement costs. Amounts paid to and by the settlement agent are shown." Dkt. # 11, Ex. E at 1. The closing agent certified that she had "caused or will cause the funds to be disbursed in accordance with this statement." Dkt. # 11, Ex. E at 3. By signing the settlement statement, plaintiff certified that, "to the best of [her] knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction." Id. It is undisputed that defendant paid King County $39.00 to record plaintiff's new deed of trust, has incomplete and in some cases conflicting data regarding the wire, express, and/or courier fees incurred for plaintiff's transaction, and did not actually perform the reconveyance of plaintiff's old deed of trust. The Talon Group did, however, track the on-line property records to make sure that reconveyance occurred. Defendant did not adjust any of the listed expenses when it finalized plaintiff's settlement statement. Dkt. # 11, Ex. F at 2.

## DISCUSSION

**I. RECORDING FEE**

Plaintiff alleges that by charging and collecting a "recording fee" in excess of the actual cost of recording the deed in King County, defendant breached the Escrow Instructions,

---

[2] As explained in the final settlement statement, this amount includes $425 as a fee to The Talon Group and $37.40 in sales tax on that amount. Dkt. # 11, Ex. F at 2.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -4-

breached its fiduciary duties, and violated the CPA. Defendant acknowledges that the failure to adjust the recording fee in the final settlement statement was a mistake. Opposition (Dkt. # 123) at 3 n.4. Each of plaintiff's claims is considered below.

**A. Breach of Contract**

Pursuant to the Escrow Instructions, defendant was authorized to charge a fee for its services as closing agent, an additional, reasonable fee if the nature of the services changed, and any third-party costs incurred in connection with the closing. The obligation to pay for third-party costs is described as "reimbursement" for the closing agent's "out-of-pocket costs and expenses." Dkt. # 11, Ex. A at 2. Defendant was contractually bound to adjust any amounts shown on the settlement statement if the estimate varied from the actual expenditure: "the final amount of each estimated item will be adjusted to the exact amount required to be paid at the time of the disbursement." Dkt. # 11, Ex. A at 1. Defendant did not make the required adjustment with regards to the recording fees and therefore breached its contract with plaintiff.

In its written submission, defendant makes two arguments in support of the collection of an estimated fee of its choosing rather than its actual out-of-pocket costs.[3] First, defendant argues that the amounts charged were appropriate because they represent third-party charges plus an additional, reasonable "fee" for defendant's troubles. Defendant's proposed interpretation of the contract ignores the language of the "additional fee" provision and fails to comport with its ordinary meaning. More troubling is the fact that the Court has already

---

[3] The Court recognizes that defendant raised these two arguments in opposition to plaintiff's claim regarding the wire/express fees, not the recording fee. Although not willing to concede liability on any of plaintiff's claims, defendant apparently acknowledges that the collection of $70 for recording fees when it knew that King County charged only $39 for the service was inappropriate. Opposition (Dkt. # 123) at 3. The recording fee claim is based on the same governing legal principles as the wire/express fee claim. Both fees represent the costs of third-party services and charges, for which defendant promised to bill "exact amounts." Defendant's arguments with regards to the wire/express fee have therefore been considered here.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -5-

determined that defendant's interpretation is unreasonable (Dkt. # 34 at 10), and yet defendant repeats the same argument here without so much as acknowledging the Court's prior ruling. The manner in which out-of-pocket expenses would be billed and defendant's obligation to ensure that estimated amounts were adjusted to reflect actual disbursements were clearly set forth in the contract. There is no reasonable interpretation of the parties' contract through which one could conclude that the "additional fee" provision, which applies only in certain narrowly-described circumstances, was triggered here.

Second, defendant argues that the contractual requirement to adjust estimated items on the settlement statement to reflect "the exact amount required to be paid at the time of disbursement" does not mean that the final settlement statement will be based on actual out-of-pocket costs. Rather, according to defendant, the "exact amount required to be paid" is simply whatever amount The Talon Group requires to be paid. Opposition (Dkt. # 123) at 8-9 (arguing that "the exact amount required to be paid" is not the equivalent of "actual costs," but instead "reflects the exact amounts to be paid to Talon consistent with the Instructions."). Such an interpretation would, of course, make superfluous all language regarding "estimated" and "final" amounts, "out-of-pocket costs and expenses," "monetary errors," and "exact amounts." It would also allow defendant to charge whatever it wished for third-party services, no matter how inflated or unsupported, as long as the service and amount were disclosed in the HUD-1 forms. Defendant's proposed interpretation is unreasonable.

**B. Breach of Fiduciary Duty**

The Court has already determined that an escrow agent holds property as an agent or trustee for the principals and is obligated to "conduct the affairs with which [it] is entrusted with scrupulous honesty, skill, and diligence." Dkt. # 34 at 7-8 (quoting <u>Denaxas v. Sandstone Court of Bellevue, LLC</u>, 148 Wn.2d 654, 663 (2003)). Unlike the cases cited by defendant, plaintiff has shown that defendant deviated from the agreed-upon instructions by failing to adjust

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT           -6-

the estimated amounts to reflect actual expenditures. Denaxas, 148 Wn.2d at 663. The fact that the Escrow Instructions did not specifically preclude defendant from secretly profiting on third-party charges does not mean it was free to do so. The general rule barring a fiduciary from self-dealing should have made it patently obvious that undisclosed mark-ups were forbidden.

At oral argument, defendant backed away from the argument that its fiduciary duties were satisfied as long as it adequately disclosed the amount it was charging for third-party services. Instead, defendant focused on the argument that its employee's failure to adjust the recording fee at closing was simply a non-wilful mistake, devoid of any intent to defraud plaintiff or to otherwise violate its fiduciary duties. No evidence was offered in support of this intensely factual assertion. Even if the individual escrow agent attested to his or her good will, an escrow agent has the "duty to exercise ordinary skill and diligence, and due or reasonable care in his employment." Nat'l Bank of Wash. v. Equity Investors, 81 Wn.2d 886, 910 (1973). As a fiduciary, he is bound to act not only with "scrupulous honesty," but also with "skill and diligence" in the performance of his escrow duties. Denaxas, 148 Wn.2d at 663. "Thus, it is the rule that an escrow agent or holder becomes liable to his principals for damage proximately resulting from his breach of the [escrow] instructions, or from his exceeding the authority conferred on him by the instructions." Nat'l Bank of Wash., 81 Wn.2d at 910. While bad faith or an intent to defraud will violate the duty of honesty, negligence in carrying out the principal's instructions violates the fiduciary's duties of skill and diligence. See Splash Design, Inc. v. Lee, 103 Wn. App. 1036, 2000 WL 1772519, at *3 (2000) (careless lien search and failure to discover error prior to closing constitute breach of fiduciary duty).

Defendant seems to be arguing for the application of some form of the "business judgment rule," pursuant to which corporate officers who stand in a fiduciary relation to the corporation they serve are immune from liability for their honest errors or mistakes of judgment as long as they act without corrupt motive and in good faith. See Interlake Porsche & Audi, Inc.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT              -7-

v. Bucholz, 45 Wn. App. 502, 509 (1986).  The "business judgment rule" is based upon a judicial preference for avoiding entanglements with the internal management of corporations, however, and does not extend to all fiduciaries.  In re Spokane Concrete Prods., Inc., 126 Wn.2d 269, 279 (1995).  Defendant has not identified, and the Court has not found, any cases in which the "business judgment rule" was applied in the escrow context:  in fact, the cases strongly suggest that the escrow agent is not at liberty to diverge from the written instructions at all, regardless of his subjective intent.  Defendant cannot escape the repercussions of having violated the duties set forth in the escrow agreement simply by asserting that the failures were a mistake.[4]

### C. Washington Consumer Protection Act Claim

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.  A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property.  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986).  Defendant argues that plaintiff is unable to satisfy the first element of her CPA claim because there was nothing deceptive about the final HUD-1 settlement statement.

Conduct is "unfair" or "deceptive" if it has the capacity to deceive a substantial portion of the population.  Sing v. John L. Scott, Inc., 134 Wn.2d 24, 30 (1997).  Defendant

---

[4] Defendant offers no evidence in support of its statute of limitations defense other than the fact that the amounts charged for the three fees at issue were not adjusted on the final HUD-1 settlement statement.  Defendant argues that the lack of an adjustment should have excited plaintiff's attention and put her on guard.  Four line items related to settlement charges were adjusted, however, and the total settlement costs varied significantly between the estimated and final statements.  The parties' pre-closing course of dealing was unremarkable, and the mere fact that certain closing costs were not adjusted would not give rise to a suspicion that defendant had failed to follow the escrow instructions or otherwise trigger a duty on plaintiff's part to explore the possibility that defendant was cheating her.  Defendant has not, therefore, raised a genuine issue of fact regarding plaintiff's exercise of due diligence under the discovery rule.  Wallace v. Lewis County, 134 Wn. App. 1, 13 (2006).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT             -8-

1 promised to adjust the estimated HUD-1 amounts at closing to reflect the exact amounts that had
2 to be disbursed on plaintiff's behalf, agreed to accept $425 as compensation for its services as
3 closing agent, misrepresented the cost of recording her deed of trust on the final settlement
4 statement, and pocketed $31 of the $70 purportedly charged for "recording." The Court finds
5 that the imposition of inflated fees, thereby secretly increasing defendant's compensation in
6 violation of defendant's express promises and plaintiff's reasonable expectations, is unfair and
7 has the capacity to deceive reasonable consumers.[5]

8        In light of defendant's contention at oral argument that the $31 overcharge was
9 simply an innocent mistake, the Court must also consider whether this error impacts the public
10 interest. The parties have reviewed 82 exemplar escrow files to determine the number of times
11 this particular error was visited up Talon's customers. Defendant, while acknowledging that an
12 error was made in plaintiff's case, argues that the recording fees reflected the actual county
13 charges in almost every instance." Opposition (Dkt. # 123) at 4. The Declaration of Julie
14 Agnew, on which this statement is based, asserts that "in the vast majority of these transactions,"
15 the recording fee accurately reflected the costs Talon incurred. Dkt. # 124 at ¶ 22. "The vast
16 majority" is a relatively loose phrase, however. A review of defendant's file summary shows
17 that 18 of the 82 customers, or approximately 22%, were overcharged by more than a few
18 dollars, with another 5 customers being undercharged. Thus, more than 25% of the recording

---

[5] Defendant argues that the final settlement statement cannot, as a matter of law, be deceptive because there is no obligation on the part of the lender to ensure that the accounting of charges and credits on the HUD-1 is accurate. Opposition (Dkt. # 123) at 13. Even if one were to assume that a lender is free to falsify the disclosures required on the form, defendant separately promised to charge its out-of-pocket expenses for recording and wire/express fees and took on fiduciary responsibilities that precluded self-dealing. Having accepted a payment for faithful service as a closing agent, having created a situation where the consumer must rely on the escrow agent to accurately state the credits and disbursements to her account, and having promised to make any necessary adjustments to the estimated amounts, defendant misled plaintiff when it presented mere estimates for payment on the final settlement statement rather than making the promised adjustments to reflect actual disbursements.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT    -9-

fee charges in the sample group were inaccurate. When determining whether the public interest is affected for purposes of the CPA, the Court considers various factors including "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" Cotton v. Kronenberg, 111 Wn. App. 258, 274 (2002) (quoting Hangman Ridge, 105 Wn.2d at 790-91). Having considered these factors, the fact that defendant offered its services to the general public, and the percentage of closings in which defendant misstated its third-party costs for recording, the Court finds that the conduct alleged by plaintiff affects the public interest.

**D. Conclusion**

By charging plaintiff more than its out-of-pocket expenses for the recording of her deed of trust, defendant breached its contract with plaintiff, breached its fiduciary duties, and violated the CPA. Plaintiff's actual damages related to the recording fee are $31.

## II. WIRE/EXPRESS FEE

Plaintiff alleges that by charging and collecting an estimated "wire/express fee" rather than the actual costs of document and fund transmission, defendant breached the Escrow Instructions, breached its fiduciary duties, and violated the CPA. Each claim is considered below.

**A. Breach of Contract**

As discussed above, defendant was contractually obligated to adjust the amounts shown on the initial HUD-1 form to reflect the actual expenditures for third-party services. It did not do so with regards to the wire/express fees, instead charging plaintiff a rough estimate of those costs because defendant failed to request per transaction pricing from certain vendors and it was simply easier to estimate the expenses. Defendant was, however, in control of the parties' agreement and was aware of how its courier, wire transfer, and overnight delivery providers

billed for their services. Defendant should not have promised to charge plaintiff its out-of-pocket costs if those costs were not ascertainable or would not be known until after closing. The escrow instructions which form the contract between the parties could have been written in any number of ways. Having promised to adjust the settlement statement to reflect the exact amounts that were disbursed on plaintiff's behalf, defendant was not authorized to utilize an estimate simply because it was more convenient.

Plaintiff has, therefore, established a breach of contract with regards to the wire/express fee. In order to recover on a breach of contract claim, however, plaintiff bears the burden of proving that she suffered "actual economic damages as a result of the breach." Columbia Park Golf Course, Inc. v. City of Kennewick, 160 Wn. App. 66, 83 (2011). Because plaintiff has failed to produce any evidence of an overpayment or other economic injury associated with the breach, she is not entitled to summary judgment on this claim.

**B. Breach of Fiduciary Duty**

Plaintiff has shown that defendant deviated from the agreed-upon escrow instructions by failing to adjust the estimated amounts to reflect actual expenditures and has accused defendant of self-dealing. As a fiduciary, defendant bears the burden of showing that its disbursement of the funds held in trust was proper. Wilkins v. Lasater, 46 Wn. App. 766, 778 (1987). The same lack of records that prevents plaintiff from proving actual economic damages for purposes of her contract and, as discussed below, CPA claims works against defendant here. Defendant is able to justify only $25.80 of the $45.00 it charged plaintiff for wire/express fees, and even that figure is subject to doubt. Decl. of Julie Agnew (Dkt. # 124) at ¶¶ 4-11 and Exs. A-G; see footnote 7 supra. Because defendant is unable to fully account for the charges deducted from plaintiff's funds at closing, it cannot demonstrate that no breach of loyalty occurred. Plaintiff is, therefore, entitled to summary judgment on her breach of fiduciary duty claim related to the wire, express, and courier fees. The amount of damages associated with that

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -11-

breach must be determined by the jury, however.

## C.  Washington Consumer Protection Act Claim

Although plaintiff has established most elements of a CPA claim related to the wire/express fee, she is unable to prove injury to her business or property for the reasons discussed in Section II.A.  Hangman Ridge, 105 Wn.2d at 780.

## D.  Conclusion

Plaintiff has not satisfied all of the elements of her breach of contract or CPA claims related to the wire/express fee.  She has, however, established her breach of fiduciary duty claim because defendant is unable to account for the wire/express charges deducted from plaintiff's funds at closing.

## III.  RECONVEYANCE FEE

Under the title "Reconveyance," the Escrow Instructions provide:

> The Talon Group - Reconveyance Department will provide reconveyance tracking services.  Such services follow up after closing to be sure a full reconveyance or satisfaction of liens paid at closing are recorded to clear the title.  The charges will be separately shown on the HUD-1 settlement statement and will be the amount charged for the particular transaction.  There are other reconveyance service providers available with similar services.  You are free to shop around to determine that you are receiving the best services and the best rate for these services.  If you wish to do so your preference should be expressed to The Talon Group in time to arrange for the services and fees in time for closing.

Defendant fully disclosed and charged a $115 "Reconveyance Fee" at closing.  Unlike other fees listed on the initial and final settlement statements, the "Reconveyance Fee" was expressly identified as an additional fee paid to The Talon Group, not a third-party vendor.  Plaintiff argues that the charge was misleading for one of two reasons.  First, plaintiff argues that the fee was improperly named on the HUD-1 settlement statement because defendant did not actually reconvey the old deed of trust, but rather monitored or tracked a reconveyance performed by a third party.  In the alternative, plaintiff argues that the reconveyance fee should have been

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT         -12-

adjusted to reflect actual expenditures related to the services performed for plaintiff's particular transaction.

The Escrow Instructions adequately explain the services that would be provided in exchange for the "Reconveyance Fee." Defendant promised to, and apparently did, track the reconveyance process as described in the Escrow Instructions. Defendant was ready and willing to take whatever steps were necessary to ensure that the old deed of trust was reconveyed, and it charged $115 for this service. Plaintiff was, therefore, adequately apprised of both the services on offer and the charge that would be assessed. While defendant's role was perfunctory in plaintiff's case, in other cases it communicated with prior lenders until they completed the reconveyance and/or substituted as trustee so that defendant could perform the reconveyance itself. These tasks were identified under the heading "Reconveyance" in both the Escrow Instructions and the settlement statement and, although the actual reconveyance rarely fell to defendant, it was part of the services offered if necessary. Because these were post-closing tasks occurring only after the funds had been disbursed, a flat fee for the service (in addition to the fee defendant charged for acting as escrow agent) was negotiated without regard to the actual tasks performed. In these circumstances, plaintiff has not shown a breach of the Escrow Instructions, a breach of fiduciary duty, or an unfair or deceptive act under the CPA.

**III. DAMAGES**

In addition to her actual damages, plaintiff seeks treble damages under the CPA and disgorgement of the unsupported charges and the escrow agent fee.

The only violation of the CPA that has been established involves the failure to adjust the recording fee, resulting in actual damages of $31. Pursuant to RCW 19.86.090, the Court will exercise its discretion to increase the award of damages to three times the actual

damages sustained, or $93.[6]

A fiduciary who self-deals may be required to disgorge all ill-gotten gains and/or any additional sums paid as compensation for his services. Kane v. Klos, 50 Wn.2d 778, 789 (1957) ("This was a suit in equity to require a faithless fiduciary to disgorge his ill-gotten gains. Public policy forbids compromise with a swindler. The fiduciary who engages in such conduct forfeits all right to compensation."); Eriks v. Denver, 118 Wn.2d 451, 462 (1992) ("The general principle that a breach of ethical duties [by a fiduciary] may result in denial or disgorgement of fees is well recognized."). The only justifications defendant has offered for its failure to adjust the recording and wire/express fees charged to plaintiff – namely employee error and defendant's convenience, respectively – are not compelling and certainly do not excuse the failure to comply with the Escrow Instructions. With regards to the recording fees, plaintiff has been awarded the full extent of her damages, and defendant has been shorn of any unearned benefits. With regards to the wire/express fees, defendants have estimated, suggested, calculated, and recollected various charges for various services at various times.[7] Despite the inconsistencies in defendant's evidence, it has raised a genuine issue of material fact regarding at least $25.80 of the charges levied on plaintiff's account. The jury must determine how much of

---

[6] Despite the rather loose language of Banuelos v. TSA Wash., Inc., 134 Wn. App. 607, 614-15 (2006), the CPA does not authorize an award of treble damages in addition to an award of actual damages. Rather, the statute allows the Court to "increase the award of damages to an amount not more than three times the actual damages sustained." RCW 19.86.090. The damages are not increased *by* an amount three times the actual damages, but rather *to* that amount. Quadruple damages are not authorized.

[7] Defendant has taken the contradictory positions that an out-going wire sent as part of plaintiff's transaction cost $5 (Dkt. # 72 at 13) or $8 (Dkt. # 124 at ¶ 8), that the cost of transmitting signed documents to plaintiff's former lender was $12.80 (Dkt. # 124 at ¶ 11) or somewhere between $15-$17 (Dkt. # 72 at 14), that it is unable to calculate the cost of overnight delivery of the payoff check (Dkt. # 124 at ¶ 9) or that the delivery cost between $12-$15 (Dkt. # 72 at 14), and that it delivered plaintiff's new deed to King County for recording at a cost of $7-$17 (Dkt. # 72 at 14) or not at all (Dkt. # 124 at ¶¶ 4-9).

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT         -14-

1  the $45 wire/express fee (and the tax on that fee) constitutes "ill-gotten gains" that defendant
2  will be required to disgorge.
3            The Court reserves judgment regarding plaintiff's request to strip defendant of the
4  agreed-upon compensation for its services as escrow agent.  In exchange for those fees,
5  defendant was obligated to carry out its duties with the utmost loyalty and care.  Instead, obvious
6  errors were made, defendant's convenience was rated more highly than its promises, and it failed
7  to keep adequate records.  Nevertheless, some services were rendered in keeping with the
8  Escrow Instructions and, depending on the evidence presented at trial, the equities may favor a
9  division of the escrow service fee rather than an outright forfeiture.
10
11           For all of the foregoing reasons, plaintiff's motion for summary judgment is
12 GRANTED in part and DENIED in part.  Plaintiff has established her breach of contract, breach
13 of fiduciary duty, and CPA claims as to the failure to adjust the recording fee.  Plaintiff has also
14 established a breach of fiduciary duty regarding the existence of unsupported wire/express
15 charges, but there is a fact issue regarding the amount of damages.  Plaintiff has established her
16 right to three times the actual damages related to the recording fee, for a total of $93.
17
18           Dated this 4th day of December, 2012.

                                                     *MWS Lasnik* (signature)
                                                     Robert S. Lasnik
                                                     United States District Judge