The Hon. Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAREN TAVENNER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE TALON GROUP, A DIVISION OF FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>Defendant. | NO. C09-1370 RSL<br><br>PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>NOTE ON MOTION CALENDAR: APRIL 10, 2014 |

## I.  RELIEF REQUESTED

Plaintiff and Class Representative Karen Tavenner, pursuant to Fed. R. Civ. P. 23(e), respectfully moves for final approval of the class action settlement preliminarily approved by the Court on December 16, 2013 (Dkt. #170), and for entry of the Final Approval Order submitted with this motion. The Defendant, The Talon Group ("Talon"), does not oppose this motion and no class member has objected to the settlement.

## II.  FACTS

**A.     Factual and Legal Background.**

The factual and procedural background of the case and description of the proposed settlement are discussed in detail in the Joint Motion of the Parties for Preliminary Approval of

PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 1
(NO. C09-1370 RSL)

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1   Proposed Class Action Settlement (Dkt. #168) and the accompanying Declaration of Guy W.

2   Beckett (Dkt. #169) filed on December 11, 2013. In the interest of brevity, Plaintiff will not

3   repeat those facts here.

4       In accordance with the Preliminary Approval Order, Settlement Administrator Tilghman

5   & Co., P.C. mailed the Court-approved Postcard Class Notice ("Notice") to all potential class

6   members. The mailing of the Notice to 71,076 class members occurred on January 14, 2014.

7   Declaration of L. Stephens Tilghman ("Tilghman Decl.") at 2. The Notice directed class

8   members to a website, www.talonnotice.com for further information about the Settlement and

9   how to file a claim. *Id.* Posted on the website for viewing and printing were several documents

10  filed in the litigation, as well as the Settlement Agreement, a detailed notice approved by the

11  Court concerning the Settlement, the Claim Form, and directions about how to file a claim or to

12  object to the settlement. *Id.;* Declaration of Guy W. Beckett in Support of Motion for Final

13  Approval of Class Action Settlement ("Beckett Decl.") at 2. The deadline for objections to the

14  settlement is April 3, 2014. To date, no objections have been received. Tilghman Decl. at 3;

15  Beckett Decl. at 4. Only one request for exclusion was received,[1] and 3,559 timely claim forms.

16  Tilghman Decl. at 2-3. Of those 3,559 claims, 247 appear to have been submitted by persons

17  who are not Class members. *Id.* at 3. Of the remaining 3,312 claims, they represent records of

18  3,858 buyer, seller, or mortgagor transactions. *Id.*

19

20           **III.  EVIDENCE RELIED ON**

21       Plaintiff relies on the prior submissions in the case, in particular the papers filed in

22  support of preliminary approval of the settlement, the papers filed in support of Class Counsel's

23  attorney's fee request, and the declarations of L. Stephens Tilghman and Guy W. Beckett filed

24

25

26  ---

[1] On February 1, 2013, Tilghman & Co., P.C. mailed notice of the Court's Class Certification Order (Dkt. #99) to
possible Class members. Tilghman Decl. at 2. As a result of that mailing 42 potential Class members requested
exclusion from the Class. *Id.*

27  PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 2
(NO. C09-1370 RSL)

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1   with this motion.

2   ## IV.  LEGAL AUTHORITY AND DISCUSSION

3   **A.      The Court Should Approve the Proposed Settlement.**

4   The "universally applied standard" in determining whether a court should grant final

5   approval to a class action settlement is whether the settlement is "fundamentally fair, adequate,

6   and reasonable." 5 Moore's Federal Practice, § 23.85 (Matthew Bender 3d ed.) (citing *In re*

7   *Pacific Enters. Sec. Litig.,* 47 F.3d 373, 377 (9th Cir. 1995) and *Class Plaintiffs v. City of Seattle,*

8   955 F.2d 1268, 1276 (9th Cir. 1992), *cert. denied,* 506 U.S. 953, 113 S.Ct. 408 (1992). The

9   Ninth Circuit has considered, if applicable, the following eight factors in determining whether a

10  proposed class action settlement is fair, reasonable, and adequate:

11      (1) the strength of the plaintiff's case;

12      (2) the risk, expense, complexity, and likely duration of further litigation;

13      (3) the risk of maintaining class action status throughout the trial;

14      (4) the amount offered in settlement;

15      (5) the extent of discovery completed and the stage of the proceedings;

16      (6) the experience and view of counsel;

17      (7) the presence of a governmental participant; and

18      (8) the reaction of the class members to the proposed settlement.

19  *See Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Hanlon v.*

20  *Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

21      Not all of these factors will apply to every class action settlement. Under certain

22  circumstances, one factor alone may prove determinative in finding sufficient grounds for court

23  approval. *See, e.g., Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993).

24  

25  

26  

27  

PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 3
(NO. C09-1370 RSL)

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

Furthermore, "[d]istrict courts have wide discretion in assessing the weight and applicability of each factor." 5 Moore's Federal Practice, § 23.85[2][a] (Matthew Bender 3d ed.). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). "Ultimately, the district court's determination is nothing more than an 'amalgam of delicate balancing, gross approximations, and rough justice.'" *Id.* (citation omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice,* 688 F.2d at 625.

### 1.    The Strength of Plaintiff's Case.

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." 5 Moore's Federal Practice, § 23.85[2][b]. However, in balancing, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Id.* As noted by the Ninth Circuit in *Officers for Justice:*

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the Court of Appeals] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.

688 F.2d at 625. Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. University of Phoenix, Inc.,* 913 F. Supp.2d 964, 975 (E.D. Cal. 2012) (citation omitted).

Here, while the Court had granted partial summary judgment on the Plaintiff's recording fee claim as to liability and damages, and on her breach of fiduciary duty claim as to liability, calculation of damages on the fiduciary breach claim would have been difficult because of the lack of records containing the actual costs incurred by Talon for her closing. Further, with respect to the Reconveyance Fee claim, the Court's ruling on Plaintiff's Motion for Partial Summary Judgment indicated that Ms. Tavenner would have an uphill battle on that claim. The Settlement reached by the parties provides a financial payment for each of the three claims.

As to class certification, courts readily acknowledge that federal law regarding class actions is in flux. *Id.* Talon made clear its intent to appeal the Court's certification decision had the case not settled.

Although Ms. Tavenner believed her case to be strong, there were risks associated with continuing the litigation. Therefore, this factor weighs in favor of final approval.

**2.      The Risk, Expense, Complexity and Likely Duration of Further Litigation.**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Newberg on Class Actions, § 11.50 at 155 (4th ed. 2002). As observed in *Oppenlander v. Standard Oil Co. (Indiana),* 64. F.R.D. 597 (D. Colo. 1974):

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

64 F.R.D. at 624 (citation omitted).

The trial would have been difficult in view of the number of lay and expert witnesses that would have been called to testify, and the number of documents that would have been introduced



into evidence. Given the length, complexity, and number of issues involved, it is very possible

that a jury may not have reached a unanimous verdict on all issues. Furthermore, even if it did

reach unanimous verdicts, it is likely that an appeal would have followed. Avoiding such a trial

and the subsequent appeals in this case strongly militates in favor of settlement rather than

further protracted and uncertain litigation.

### 3.   The Risk of Maintaining Class Action Status Throughout the Trial.

The Court, at any time, could have decertified the classes that had been certified in this

litigation. Fed. R. Civ. P. 23(c)(1)(C). Indeed, Talon's motion for decertification was pending at

the time the Settlement was reached. Given the recent decisions of the U.S. Supreme Court in

class action cases,[2] decertification was a substantial risk. In view of this potential risk, this factor

supports approval of the Settlement.

### 4.   The Amount Offered In Settlement

In assessing the consideration obtained by the class members in a class action settlement,

"[i]t is the complete package taken as a whole, rather than the individual component parts, that

must be examined for overall fairness." *Officers for Justice,* 688 F.2d at 628. In this regard, it is

well-settled law that a proposed settlement may be acceptable even though it amounts to only a

fraction of the potential recovery that might be available to the class members at trial. *See

Linney,* 151 F.3d at 1242 (citation omitted).

The Settlement obtained for the class here provides, for each person who submitted a

claim who was charged one of these fees, payment of $35 for the fee to record a deed of trust; $5

for the fee to record any other document; $10 for the wire/express fee; and $5 for the

reconveyance fee. In addition, any person who submitted a claim who paid a reconveyance fee

---

[2] *See e.g., Comcast Corp, Inc. v. Behrend,* __ U.S. __, 133 S.Ct. 1426 (2013); *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. __, 131 S.Ct. 2541 (2011).

PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 6
(NO. C09-1370 RSL)

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

shall receive a coupon for a $50 discount on any escrow closing at First American Title

Insurance Company in the next six years. Ms. Tavenner was charged $39 more than the actual

recording fee for her deed of trust; she was not charged to record any other documents; the

amount she was overcharged for the wire/express fees, or if she was overcharged at all, could not

be established due to the lack of records; and she was charged $115 for a Reconveyance Fee.

Given the risks associated with continued litigation, the recovery obtained by Ms. Tavenner for

the class was very favorable, and supports final approval of the Settlement.

### 5.    The Extent of Discovery Completed and the Stage of the Proceedings

"The extent of discovery may be relevant in determining the adequacy of the parties'

knowledge of the case." Manual for Complex Litigation, Third, § 30.42 (1995). "A court is more

likely to approve a settlement if most of the discovery is completed because it suggests that the

parties arrived at a compromise based on a full understanding of the legal and factual issues

surrounding the case." 5 Moore's Federal Practice, § 23.85[2][e]. A settlement following

sufficient discovery and genuine arms-length negotiation is presumed fair. *National Rural

Telecommunications Cooperative v. DirecTV, Inc.,* 22 F.R.D. 523, 528 (C.D. Cal. 2004)

(citations omitted).

The proposed Settlement was reached among the settling parties after the completion of

all liability and damages discovery. In connection with these discovery proceedings, numerous

depositions were taken and thousands of pages of documents were exchanged by the parties. In

addition, all summary judgment motions had been decided by the Court prior to the proposed

settlement. As a result, the proposed Settlement was reached only after the parties had

exhaustively examined the factual and legal bases of the disputed claims. This fact strongly

militates in favor of the Court's approval of the Settlement. *See id.* at 527-28.



**6.     The Experience and Views of Counsel.**

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Id.* at 528 (citation omitted). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Id.* (citation omitted). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* (citations omitted). A presumption of correctness applies to a class action settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery. *Hanrahan v. Britt,* 174 F.R.D. 356, 366-68 (E.D. Pa. 1997) (citing Manual for Complex Litigation, Second §30.41 (1985)).

Class Counsel are highly experienced in class action litigation, and have appeared in a number of such cases before this Court. They, with the Class Representative, strongly believe that the proposed Settlement is a fair, adequate, and reasonable resolution of the Class's dispute with Talon and is preferable to continued litigation.

**7.     The Presence of a Governmental Participant**

There is no governmental participant in this case. As a result, this factor does not apply to the Court's analysis.[3]

**8.     Reaction of the Class Members to the Proposed Settlement**

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." 5 Moore's Federal Practice, § 23.85[2][d]. In this regard, "[t]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may

---

[3] Counsel for Talon mailed notice of the proposed settlement to U.S. Attorney General Eric Holder, Washington State Attorney General Bob Ferguson, and Washington State Insurance Mike Kreidler, on December 19, 2013. Beckett Decl. at 1 and Ex.'s 1-3.

PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 8
(NO. C09-1370 RSL)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

have a better understanding of the case than most members of the class." Manual for Complex

Litigation, Third, § 30.44 (1995).

No objections to the proposed Settlement have been filed with the Court or served on

counsel. This provides persuasive proof that the Settlement should be approved:

> The absence of a single objection to the Proposed Settlement provides
> further support for final approval of the Proposed Settlement. It is
> established that the absence of a large number of objections to a proposed
> class action settlement raises a strong presumption that the terms of a
> proposed class settlement action are favorable to the class members.
> (Citations omitted). … The complete absence of Class Member objections
> to the Proposed Settlement speaks volumes with respect to the
> overwhelming degree of support for the Proposed Settlement among the
> Class Members. That unanimous, positive reaction to the Proposed
> Settlement is compelling evidence that the Proposed Settlement is fair, just,
> reasonable, and adequate.

DirecTV, Inc., 221 F.R.D. at 529.

The lack of any objections to the proposed Settlement between Talon and the class in this

case provides overwhelming support for the conclusion that the Settlement should be approved.

**B.     Proper Notice of the Proposed Settlement was Provided to Class Members.**

In the Court's Preliminary Approval Order, it approved the form of notice of the

proposed Settlement to be given class members. The Notice Plan approved by the Court was

completed by the Settlement and Claims Administrator, Tilghman & Co., P.C.

In the Court's Preliminary Approval Order, April 3, 2014 was set as the deadline for

objections to the proposed settlement, and Class Counsel's fee petition was ordered to be filed no

later than thirty days prior to that date. However, the postcard notice of the proposed Settlement

mailed to class members on January 14, 2014 stated that the objection deadline was February 28,

2014. Beckett Decl., Ex. 4. The settlement website became live on January 15, 2014. Id. at 2.

From January 15 to January 24, 2014, the Settlement website home page stated that the objection

PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 9
(NO. C09-1370 RSL)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

deadline was February 28, 2014 and that Class Counsel's fee petition would be available for viewing on the website no later than January 29, 2014. *Id.,* Ex. 5. This error was discovered by January 24, 2014, and the home page was modified that day to state that objections to the Settlement were required to be postmarked no later than April 3, 2014, and that the fee petition would be available for viewing on the website no later than March 3, 2014. *Id.,* Ex. 6. In addition, a notice was placed at the top of the home page, stating in bold print, in a font size bigger than the rest of the content on that page:

> **IMPORTANT NOTICE: THE POSTCARDS CLASS MEMBERS RECEIVED CONCERNING THE PROPOSED CLASS ACTION SETTLEMENT STATE THAT OBJECTIONS TO THE SETTLEMENT MUST BE POSTMARKED BY FEBRUARY 28, 2014. THAT DATE HAS BEEN EXTENDED: OBJECTIONS TO THE SETTLMENET MUST BE POSTMARKED NO LATER THAN APRIL 3, 2014.**

*Id.*[4]

Likewise, from January 15 to January 24, 2014, the long form notice posted on the settlement website stated that the objection deadline was February 28, 2014, and that Class Counsel's fee petition was due on January 29, 2014. *Id.,* Ex. 8. This notice was corrected to comply with the Court's Preliminary Approval Order on January 24, 2014. *Id.,* Ex. 9.

These errors do not affect the determination that notice to the class was proper. First, the error was in class members' favor – if they wished to object to the Settlement, they had over one month longer than the date stated in the postcard and originally on the Settlement website to do so. Further, Class Counsel did in fact file their fee petition and make it available for viewing on

---

[4] The notice on the Settlement website home page was further modified on February 26, 2014 to state, in addition to the bracketed material above, "**THE DATE FOR SUBMITTING CLAIM FORMS HAS NOT BEEN EXTENDED, AND CLAIM FORMS MUST BE POSTMARKED BY FEBRUARY 28, 2014.**" *Id.,* Ex. 7. The content on the Settlement website home page was agreed to by the parties' counsel, and the modifications to the content on the home page identified in Exhibits 5-9 to the Beckett Declaration were also agreed to by the parties' counsel. *Id.* at 4-5.

Berry & Beckett
PLLP

the website by the date originally stated on the website and in the long form notice, January 29, 2014. Dkt. #'s 171-173.[5]

In a similar situation, where the original notice mailed to class members identified the class period as starting on April 5, 2012 rather than April 5, 2005, and where class counsel realized the error eight days after the mailing and took remedial measures to inform class members of the correct date, the court concluded that notice to the class of the settlement was still proper. *Adoma,* 913 F. Supp.2d at 974. In light of the minor nature of the error in the notice in this case, the fact that the error benefited the class, the filing by Class Counsel of their fee petition on the incorrect date originally identified – over one month before the deadline imposed by the Court – and the steps taken by Class Counsel to mitigate the error, the Court should likewise conclude that notice to the class of the Settlement was proper.

**C.     The Requested Attorneys' Fees and Litigation Costs are Reasonable and Should be Approved.**

Class Counsel moved for an attorney's fee of $773,511.00, reimbursement of expenses paid by Class Counsel of $69,489, and payments to the Settlement Administrator of $57,000. Dkt. #175 at 2. If the value of the coupons for escrow services at First American Title Insurance Company are included, the fee request is 21.6% of the common fund. If the value of the coupons is not included, the fee request is 35.56% of the common fund, but relevant circumstances support a deviation upward from the Ninth Circuit 25% benchmark.[6]

The fee request was described in the long form Settlement notice approved by the Court

---

[5] Class Counsel's Amended Fee Petition was filed on February 4, 2014. Dkt. #175. The Amended Fee Petition did not request any amounts payable to Class Counsel or the Class Representative that were different than the amounts requested in the Fee Petition filed on January 29, 2014. Beckett Decl. at 4.

[6] In the fee motion, Class Counsel requested approval to pay Tilghman & Co., P.C. $57,000 of the $900,000 amount set aside in the Settlement to pay for attorney's fees, expenses, and Settlement administration expenses. Tilghman & Co., P.C.'s estimate to complete Settlement administration is now $75,000. Tilghman Decl. at 3. Class Counsel requests authority to pay Tilghman & Co., P.C. from the $900,000 the full amount of its bill. This will reduce the amount payable to Class Counsel for attorney's fees by $18,000, to $755,511. This changes the percentage-of-the-fund amounts to 21.05% and 34.7%, respectively.

and posted on the Settlement website. In addition, the fee petition and the supporting declarations

and exhibits were posted on the website and available for viewing by class members on the day

they were filed. Beckett Decl., at 4. Since filing the fee petition and supporting declarations,

Class Counsel have expended at least an additional 14.6 hours in communicating with class

members and counsel for Talon, administration of the Settlement, and preparation of this motion

for final approval. *Id.*

Talon does not oppose the requested fee award. All class members were informed in the

Settlement Notice that class counsel would seek this fee and cost award, and none have objected.

*Id.* For the reasons explained in the fee petition, the requested award is reasonable and should be

approved.

**D.     The Requested Class Representative Fee is Reasonable and Should be Approved.**

Class Counsel also requested the Court to award Ms. Tavenner a Service Award of

$10,000. Dkt. #175 at 18-19. Similarly, this request was identified in the long form notice posted

on the Settlement website. Defendant does not oppose this award, and no class member has

objected to it. Beckett Decl. at 4; Tilghman Decl. at 3. For the reasons discussed in the fee

petition, the requested Service Award of $10,000 for Ms. Tavenner is reasonable and should be

approved.

**V.  CONCLUSION**

For the foregoing reasons, and for the reasons discussed in Plaintiff's Motion for

Preliminary Approval, and the Amended Plaintiff's Motion for Award of Attorney's Fees and

Costs and Incentive Award for Named Plaintiff, the Court should enter the accompanying Final

Approval Order, which grants final approval of the class Settlement, awards attorney's fees and

litigation costs to class counsel, awards Ms. Tavenner a Service Award of $10,000, and

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1    authorizes the payment of Settlement administration costs to Tilghman & Co., P.C.

2        DATED THIS 21st day of March, 2014.

3                                    BERRY & BECKETT, PLLP

4                                    _____/s/ Guy Beckett_____
                                     Guy W. Beckett, WSBA #14939
5

6                                    WILLIAMSON & WILLIAMS
                                     Rob Williamson, WSBA #11387
7                                    936 N. 34th Street, Ste. 300
                                     Seattle, WA 98103
8                                    Tel:    206.466.6136
                                     Fax:    206.535.7899
9

10                                   *Co-Counsel for Plaintiff and the Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 13
(NO. C09-1370 RSL)

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346